**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| HOLIDAY HOSPITALITY FRANCHISING, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| AMIKA CAPITAL INVESTMENTS, INC., ATULKUMAR R. AMIN, PARUL A. AMIN and HANSABEN J. PATEL, | ) ) ) | |
| Defendants. | ) ) ) | |

**<u>COMPLAINT</u>**

Plaintiff Holiday Hospitality Franchising, LLC, as successor in interest to Holiday Hospitality Franchising, Inc. ("HHFL"), respectfully states its complaint as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

HHFL is a limited liability company organized under the laws of the State of Delaware, with its principal office located in the State of Georgia.

2.

HHFL's sole member is Six Continents Hotels, Inc., which does business under the tradename InterContinental Hotels Group ("IHG"). IHG is a corporation organized under the laws of the State of Delaware with its principal office located in the State of Georgia.

3.

Defendant Amika Capital Investments, Inc. ("Amika") is a corporation organized under the laws of the State of Colorado with its principal office located in Arapahoe County, Colorado.

Amika may be served through its registered agent, Atulkumar R. Amin, at 6872 Lemon Gulch Drive, Castlerock, Colorado, 80108.

4.

Defendant Atulkumar R. Amin is a resident and citizen of the State of Colorado and may be personally served at 6872 Lemon Gulch Drive, Castlerock, Colorado, 80108.

5.

Defendant Parul A. Amin is a resident and citizen of the State of Colorado and may be personally served at 6872 Lemon Gulch Drive, Castlerock, Colorado, 80108.

6.

Defendant Hansaben J. Patel is a resident and citizen of the State of Colorado and may be personally served at 6872 Lemon Gulch Drive, Castlerock, Colorado, 80108.

7.

The Court has diversity subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

8.

As a limited liability company, HHFL is a citizen of each state in which its sole member, IHG, is a citizen.  As a corporation organized under the laws of the State of Delaware with its principal place of business located in the State of Georgia, IHG is a citizen of the States of Delaware and Georgia.  HHFL, therefore, is a citizen of the States of Delaware and Georgia.

9.

Each of the defendants in this action, Amika, Atulkumar R. Amin, Parul A. Amin, and Hansaben J. Patel (collectively, "Defendants") is a citizen of the State of Colorado. As a corporation organized under the laws of the State of Colorado with its principal place of business located in the State of Colorado, Amika is a citizen of the State of Colorado. As residents of the State of Colorado who have demonstrated their intent to remain in the State of Colorado, Atulkumar R. Amin, Parul A. Amin, and Hansaben J. Patel (collectively, the "Guarantors") are citizens of the State of Colorado.

10.

This Court has personal jurisdiction over Defendants because they are residents and citizens of the State of Colorado.

11.

Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because all Defendants reside in the State of Colorado and in the District of Colorado.

## FACTUAL BACKGROUND

12.

Amika entered into a certain Candlewood Suites® Franchise Agreement with Candlewood Hotel Company, LLC ("CHC"), dated November 14, 2001 (together with any amendments, modifications and extensions thereof or thereto, the "Franchise Agreement"). Pursuant to the Franchise Agreement, Amika agreed to build a Candlewood Suites®-branded hotel in Englewood, Colorado (the "Hotel") and, thereafter, to operate the Hotel under the Candlewood Suites® hotel branding, marketing, and operations system (the "Candlewood

Suites® System" or the "System").   A true and correct copy of the Franchise Agreement is attached hereto as Exhibit A and by this reference is incorporated herein. [1]

13.

"As an inducement to CHC to enter into the [] Franchise Agreement," the Guarantors executed a certain Guaranty (the "Guaranty"), pursuant to which they, "jointly and severally, guarantee[d] the punctual payment and performance of all obligations of [Amika] under the Franchise Agreement."   The Guarantors further agreed that the Guaranty "shall be [] unconditional, irrevocable and continuing," and their obligations under the Guaranty "shall not be modified, waived or released by any modification, amendment or departure from the terms of the Franchise Agreement."   In addition, the Guarantors agreed in the Guaranty that they are obligated "to pay and perform the obligations of [Amika] under the Franchise Agreement without prior notice or demand" and without any requirement that satisfaction of the obligations be first sought from Amika or any other Guarantor.   A true and correct copy of the Guaranty is attached hereto as Exhibit B and by this reference is incorporated herein.

14.

On December 31, 2003, IHG acquired from Candlewood Hotel Company, Inc. and CHC all rights to the Candlewood Suites® System and all rights of CHC in all Candlewood Suites® franchise agreements and guaranties of franchise agreements.   Effective as of the same day, IHG licensed the Candlewood Suites® System and assigned its interests and rights in Candlewood Suites® franchise agreements and guaranties of franchise agreements to Holiday Hospitality

---

[1] The name of the franchisee in the Franchise Agreement was originally stated as "Amika Investments, Inc."  However, on or about April 20, 2009, a Letter Agreement was entered into stipulating that the correct name of the franchisee is Amika Capital Investments, Inc.  A true and correct copy of the April 20, 2009 Letter Agreement is contained in Exhibit A.

Franchising, Inc.   Thereafter, on March 26, 2012, Holiday Hospitality Franchising, Inc. converted to a limited liability company and, thus, became known as Holiday Hospitality Franchising, LLC, the plaintiff in this action.  Consequently, as of March 26, 2012, HHFL is the franchisor under the Franchise Agreement.

15.

Amika agreed in Article 4 of the Franchise Agreement to pay HHFL a monthly royalty fee and marketing fund fee (collectively, the "System Fees") in exchange for HHFL's authorization for Amika to use the Candlewood Suites® System at the Hotel, among other services and products provided by HHFL.  Specifically, Section 4.1.B provides that, for the first 24 months of the Hotel's operation, Amika will pay HHFL a monthly royalty fee in the amount of 4% of the gross revenue generated by the Hotel through the rental of guest rooms (the "Room Revenues") and, thereafter, Amika will pay HHFL a monthly royalty fee in the amount of 5% of the Hotel's Room Revenues.  Section 4.1.C provides that Amika will pay HHFL a monthly marketing fund fee in the amount of 1.5% of the Hotel's Room Revenues, subject to adjustment from time to time up to an amount of 2.5% of the Hotel's Room Revenues.

16.

In Section 4.2 of the Franchise Agreement, Amika agreed to pay HHFL the System Fees owed each month "by the 15th day after the end of the calendar month in which such Room Revenues were received by [Amika]."  Amika further acknowledged in that provision that any System Fee payment "not actually received by [HHFL] on or before [its due date] shall be deemed overdue" and agreed that it would "immediately upon demand [pay HHFL] the overdue amount together with a late charge on such amount from the date it was due until paid, at the

-5-

lesser of 1.5% per month or the maximum rate permitted by law."  Charges of interest for late payment of System Fees are referred to herein as "Finance Charges."

17.

Section 4.2 of the Franchise Agreement further provides that Amika's "failure to pay all such amounts when due [to HHFL] shall constitute grounds for termination of th[e] Agreement, as provided in Section 14.1.E of th[e] Agreement."

18.

Moreover, in Section 16.3 Amika expressly "agree[d] that [it] w[ould] not, on grounds of the alleged nonperformance by [HHFL] of any of its obligations [under the agreement], withhold payment of any royalties, marketing and advertising contributions, amounts due to [HHFL] for purchases by[Amika], or any other amounts due [to HHFL]."

19.

Under Section 3.1 of the Franchise Agreement, the Franchise Agreement's term is for "20 years from the date of Opening of the Hotel."  Because the Hotel opened as a Candlewood Suites® hotel on October 25, 2007, the term of the Franchise Agreement was set to expire on October 25, 2027.  The Franchise Agreement does not permit Amika to terminate the agreement prior to the expiration of the agreement's term, and it obligates Amika to comply with the provisions of the agreement throughout its term, including, without limitation, timely paying HHFL the amounts owed to it under the terms of the agreement and otherwise.

20.

Article 14 of the Franchise Agreement sets forth grounds for early termination of the agreement by HHFL as a result of Amika's default under the terms of the Franchise Agreement,

including Amika's default for failure to timely pay HHFL amounts due under the agreement.

Section 14.1.E. specifically states that the Franchise Agreement may be terminated as follows:

> At the election of [HHFL], effective upon the expiration of 30 days after giving of written notice (10 days in the case of non-payment of any financial obligation), in the event [Amika] defaults, and does not cure to [HHFL's] reasonable satisfaction within the 30-day (or 10 day) notice period, in the performance of any other covenant or provision of th[e] Agreement, including without limitation, the obligation to pay when due any financial obligation to [HHFL] . . . .

21.

Article 14 of the Franchise Agreement also provides that "[t]ermination of th[e] Agreement shall not relieve [Amika] of any unfulfilled obligation to [HHFL] created [t]hereunder," and the "rights of [HHFL] to terminate th[e] [Franchise Agreement] are in addition to, and not in lieu of, other remedies available at law or equity for defaults by [Amika] in the payment and performance of its obligations hereunder."

22.

Article 15 of the Franchise Agreement sets forth certain obligations of Amika upon expiration or termination of the agreement.  Section 15.9 specifically provides, among other obligations, that Amika "shall within 10 days from the termination or expiration pay all sums owing to [HHFL] and its affiliated companies," and, "in the event of termination for any default of [Amika], such sums shall include payment of all damages . . . incurred by [HHFL]."

23.

In Section 15.11 of the Franchise Agreement, HHFL and Amika acknowledged "the difficulty of ascertaining damages to [HHFL] resulting from premature termination of th[e] Agreement and have [therefore] provided for Liquidated Damages, which Liquidated Damages represent the parties best estimate as to the damages arising from the circumstances in which

they are provided and which are the only damages for the premature termination of th[e] Agreement and not as a penalty or as damages for breaching th[e] Agreement or in lieu of any other payment."

24.

Section 15.11 of the Franchise Agreement further provides that, if the agreement terminated pursuant to Section 14.1.E as a result of Amika's default under the agreement, Amika "shall pay to [HHFL] within 10 days of termination a lump sum payment (as Liquidated Damages and not as a penalty or in lieu of any other payments required under th[e] Agreement) equal to the total of all amounts required under Section 4 of th[e] Agreement (franchise fees, royalty fees, and marketing and advertising contributions) for [] the 36 calendar months of operation of the Hotel under the System preceding [Amika's] default."

25.

Pursuant to Section 19.7 of the Franchise Agreement, Amika agreed to pay HHFL "all legal fees, costs and expenses, including reasonable attorneys' fees, whether incurred prior to, or in preparation for or contemplation of the filing of any claim, demand, action, or proceeding to enforce any obligation of Franchisee hereunder or thereafter or otherwise."

26.

For years following the execution of the Franchise Agreement, the parties performed under the agreement.  Among other performances, HHFL performed by providing Amika with access to the Candlewood Suites® System in the operation of the Hotel, and Amika performed by operating the Hotel as a Candlewood Suites® hotel and paying HHFL monthly System Fees.

27.

By early January 2019, however, Amika was in default under the Franchise Agreement by failing to timely pay Systems Fees and Finance Charges to HHFL.  IHG sent a letter on behalf of HHFL to Amika, dated January 9, 2019 (the "January 9, 2019 Notice Letter"), notifying Amika of its financial default under the Franchise Agreement and demanding that Amika pay HHFL the $58,603.59 in outstanding System Fees and Finance Charges due and owing at that time no later than January 29, 2019.  The letter further informed Amika that April 19, 2019 had been established as the date on which the Franchise Agreement would terminate unless Amika cured its financial default in full or the termination date was extended by HHFL's Franchise Compliance Committee.  A true and correct copy of the January 9, 2019 Notice Letter is attached hereto as Exhibit C and is incorporated herein by reference.

28.

Thereafter, HHFL extended Amika's deadline for curing its financial default as a concession to Amika in an effort to allow Amika to become current on its obligations to HHFL. On March 6, 2019, IHG sent Amika a letter (the "March 6, 2019 Notice Letter"), notifying Amika that IHG had extended the April 19, 2019 termination date to June 10, 2019.  The March 6, 2019 Notice Letter further informed Amika that, if it "fail[ed] to timely cure the [financial] default by April 10, 2019, in accordance with the January 9, 2019 letter, the [Franchise Agreement] w[ould] be terminated on June 10, 2019.  A true and correct copy of the March 6, 2019 Notice Letter is attached hereto as Exhibit D and by this reference is incorporated herein.

29.

Despite its receipt of the January 9, 2019 and March 6, 2019 Notice Letters, Amika did not cure its financial defaults.  Instead, Amika continued defaulting on its monthly financial obligations to HHFL, with its delinquent obligations to HHFL increasing each month.  By May 2019, Amika owed HHFL $119,394.70 in past due System Fees and Finance Charges. Consequently, on May 7, 2019, IHG sent Amika a final notice of default and termination on behalf of HHFL (the "May 7, 2019 Final Notice Letter").  The May 7, 2019 Final Notice Letter informed Amika that, because of its failure to cure its financial defaults, HHFL was terminating the Franchise Agreement on June 10, 2019.  A true and correct copy of the May 7, 2019 Final Notice Letter is attached hereto as Exhibit E and by this reference is incorporated herein.

30.

On June 10, 2019, Amika's financial defaults remained uncured, and, as a result, HHFL terminated the Franchise Agreement.  Amika's failure to cure its financial defaults after notice and opportunities to cure the defaults constitutes a material breach of the Franchise Agreement.

31.

Amika's breach of the Franchise Agreement proximately caused HHFL damages in the amount of past due System Fees and Finance Charges.  As of the date of this Complaint, Amika owes HHFL $154,840.07 in past due System Fees and $17,047.06 in past due Finance Charges. A true and correct copy of a chart itemizing the past due System Fees and Finance Charges owed to date is attached hereto as Exhibit F and by this reference is incorporated herein.

32.

At the time of the Franchise Agreement's termination, over eight years remained on the agreement's term.  HHFL reasonably expected that Amika would have performed its obligations under the Franchise Agreement, including its financial obligations, for the agreement's entire term.  Amika's breach of the Franchise Agreement, therefore, caused the Franchise Agreement to terminate prematurely and deprived HHFL of the System Fees it reasonably expected to be paid by Amika for the remainder of the agreement's term.

33.

Pursuant to Section 15.11 of the Franchise Agreement, the damages Amika owes HHFL for its loss caused by the premature termination of the agreement are calculated as liquidated damages under the parties' agreed-to formula.  Pursuant to that formula, Amika owes HHFL liquidated damages in the amount of $402,669.45, which "equals the total of all amounts [Amika was] required [to pay HHFL] under Section 4 of th[e] Agreement (franchise fees, royalty fees, and marketing and advertising contributions) for the 36 calendar months of operation of the Hotel under the System preceding [Amika's] default."  A spreadsheet reflecting the calculation of the liquidated damages amount is attached hereto as Exhibit G and by this reference is incorporated herein.

34.

Pursuant to Sections 10.9 and 10.11 of the Franchise Agreement, Amika was required to pay HHFL all amounts due under the agreement, including damages comprised of past due System Fees and Finance Charges and liquidated damages, "within 10 days of [the agreement's] termination."  Amika, however, failed to timely pay the amounts due and owing.  Amika's

failure to pay the damages, including liquidated damages, owed to HHFL within 10 days of the Franchise Agreement's termination constitutes a material breach of the agreement.

35.

Pursuant to the Guaranty, the Guarantors are jointly and severally liable to HHFL for the damages Amika owes HHFL under the Franchise Agreement, comprised of past due System Fees, Finance Charges, and liquidated damages.  Consequently, on November 12, 2019 and December 13, 2019, IHG sent demand letters to the Guarantors, informing the Guarantors that they were obligated to pay HHFL the past due System Fees, Finance Charges, and liquidated damages owed by Amika under the Franchise Agreement.

36.

In addition to sending demand letters, representatives of IHG exchanged communications with a representative of Defendants in an attempt to resolve the parties' dispute without the need for legal proceedings.  The parties, however, were unable to resolve the dispute, and the negotiations between the party have, at present, ceased.

37.

To date, Defendants have failed and refused to pay amounts due and owing to HHFL pursuant to the terms of the Franchise Agreement and Guaranty.  Consequently, on March 30, 2020, HHFL, through counsel, sent Defendants a letter (the "March 30, 2020 Demand Letter"), demanding payment of $574,556.58 in total damages owed by Defendants at the time, including $402,669.45 in liquidated damages, $154,840.07 in System Fees, and $17,047.06 in Finance Charges.  A true and correct copy of the March 30, 2020 Demand Letter is attached hereto as Exhibit H and by this reference is incorporated herein.

38.

In addition, in accordance with the dispute resolution procedures contained in Article 19 of the Franchise Agreement, on March 30, 2020, prior to filing this lawsuit, HHFL initiated mediation with Defendants by filing a Request for Mediation with the American Arbitration Association.  On the same day, HHFL, through counsel, sent Defendants a letter notifying them of the Request for Mediation (the "March 30, 2020 Notice of Request for Mediation").  The Notice of Request for Mediation further informed Defendants that HHFL planned to file this lawsuit against them, but, if Defendants demonstrated their intention to participate in the mediation with HHFL within fourteen days of receiving the letter, then HHFL would agree to stay the lawsuit, pending completion of the mediation proceedings.  A true and correct copy of the March 30, 2020 Notice of Request for Mediation is attached hereto as Exhibit I and by this reference is incorporated

39.

In addition to the damages described above, Defendants owe HHFL prejudgment interest on the unpaid System Fees and liquidated damages, which accrues from the date of this Complaint until the time of judgment.

40.

Finally, in accordance with Section 19.7 of the Franchise Agreement and the terms of the Guaranty, Defendants owe HHFL its reasonable attorneys' fees and costs incurred in enforcing its rights and recovering amounts due under the Franchise Agreement.

41.

All conditions precedent for bringing this lawsuit have been performed or waived.

## COUNT I
### (Breach of the Franchise Agreement – Against Amika)

42.

HHFL re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in Paragraphs 1 through 41 of the Complaint and all other paragraphs referencing Amika's obligations under the Franchise Agreement and breach of such obligations.

43.

The Franchise Agreement constitutes a binding contract between HHFL and Amika.

44.

The Franchise Agreement was supported by sufficient consideration.  Namely, among other benefits, HHFL authorized Amika to use the Candlewood Suites® System in the operation of the Hotel, and Amika agreed to pay HHFL monthly System Fees.

45.

HHFL performed under the Franchise Agreement by, among other performances, providing Amika with access to the Candlewood Suites® System for use in the operation of the Hotel.

46.

Amika defaulted under the terms of the Franchise Agreement by failing to timely pay HHFL System Fees and Finance Charges as required in Article 4 of the Franchise Agreement. Amika materially breached the Franchise Agreement by failing to cure its financial defaults after notice and opportunities to cure the defaults.

47.

Pursuant to Section 15.11 of the Franchise Agreement, because the Franchise Agreement was prematurely terminated due to Amika's default and breach thereof, Amika is liable to HHFL for liquidated damages in the amount of $402,669.45 as a reasonable pre-estimate of HHFL's future lost System Fees and other amounts and profits.

48.

Pursuant to Sections 10.9 and 10.11 of the Franchise Agreement, Amika was required to pay HHFL all amounts due under the agreement, including damages comprised of past due System Fees and Finance Charges and liquidated damages, "within 10 days of [the agreement's] termination."  Amika's failure to pay the damages, including liquidated damages, owed to HHFL within 10 days of the Franchise Agreement's termination constitutes a material breach of the agreement.

49.

As a proximate result of Amika's breaches of the Franchise Agreement, HHFL has incurred damages in the amount of $574,556.58, including $402,669.45 in liquidated damages, $154,840.07 in System Fees, and $17,047.06 in Finance Charges, plus prejudgment interest on the unpaid liquidated damages and System Fees, and reasonable attorneys' fees, costs, and expenses.

50.

In the event the liquidated damages are deemed unenforceable for any reason, then, in the alternative, HHFL is entitled to recover its actual lost future profits damages resulting from the early termination of the Franchise Agreement, plus prejudgment interest thereon.

51.

HHFL is entitled to judgment against Amika for the foregoing amounts.

## COUNT II

### (Breach of the Guaranty – Against the Guarantors)

52.

HHFL re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in Sections 1 through 51 of the Complaint and all other paragraphs referencing the Guarantors' obligations under the Guaranty and breach of such obligations.

53.

The Guaranty constitutes a binding contract between HHFL and the Guarantors.

54.

The Guaranty was supported by sufficient consideration.  The Guaranty incentivized CHC to enter the Franchise Agreement with Amika, and, in the Guaranty, the Guarantors agreed to be personally liable for the obligations of Amika under the Franchise Agreement.

55.

CHC performed under the Guaranty by entering the Franchise Agreement with Amika and performing under the Franchise Agreement.

56.

Pursuant to the Guaranty, the Guarantors unconditionally guaranteed that all of Amika's obligations under the Franchise Agreement would be promptly paid and performed.

57.

As a proximate result of its breaches of the Franchise Agreement, Amika owes HHFL damages in the amount of $574,556.58, including $402,669.45 in liquidated damages, $154,840.07 in System Fees, and $17,047.06 in Finance Charges, plus prejudgment interest on the unpaid liquidated damages and System Fees and reasonable attorneys' fees, costs, and expenses.

58.

Pursuant to the Guaranty, the Guarantors are jointly and severally liable for the foregoing amounts.

59.

HHFL has demanded payment of the foregoing amounts from the Guarantors.

60.

The Guarantors have breached their obligations under the Guaranty by failing and refusing to pay Amika's financial obligations (that are due pursuant to the terms of the Franchise Agreement) to HHFL.

61.

As a proximate result of the Guarantors' breaches, as of the date of this Complaint, HHFL has incurred damages in the amount of $574,556.58, including $402,669.45 in liquidated damages, $154,840.07 in System Fees, and $17,047.06 in Finance Charges, plus prejudgment interest and reasonable attorneys' fees, costs, and expenses.

62.

In the event the liquidated damages provision contained in the Franchise Agreement is deemed unenforceable for any reason, then, in the alternative, HHFL is entitled to recover from the Guarantors its actual damages resulting from the early termination of the Franchise Agreement, plus all prejudgment interest thereon.

63.

HHFL is entitled to judgment against the Guarantors for the foregoing amounts.

**COUNT III**
**(Attorneys' Fees – Against All Defendants)**

64.

HHFL re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in Sections 1 through 63 of this Complaint.

65.

Section 19.7 of the Franchise Agreement requires Amika to pay to HHFL "all legal fees, costs and expenses, including reasonable attorneys' fees, whether incurred prior to, or in preparation for or contemplation of the filing of any claim, demand, action, or proceeding to enforce any obligation of [Amika] hereunder or thereafter or otherwise."

66.

Pursuant to the Guaranty, the Guarantors are jointly and severally liable for the foregoing amounts.

67.

HHFL has incurred and continues to incur attorneys' fees and costs in enforcing the terms of the Franchise Agreement and in collecting amounts due pursuant to the terms of the Franchise Agreement.

68.

HHFL is entitled to a judgment requiring Defendants to pay the amounts in attorneys' fees and costs it has incurred in enforcing the terms of the Franchise Agreement and collecting amounts due pursuant to the terms of the Franchise Agreement.

## PRAYER FOR RELIEF

WHEREFORE, HHFL prays for the following relief:

(a)     That the Court enter judgment in favor of HHFL and against Defendants, jointly and severally, for damages in the amount of $574,556.58, including $402,669.45 in liquidated damages, $154,840.07 in System Fees, and $17,047.06 in Finance Charges, plus reasonable attorneys' fees, costs, and prejudgment interest on the unpaid liquidated damages and System Fees that accrues from the date of this Complaint until the time of judgment;

(b)     In the alternative, in the event the liquidated damages are deemed unenforceable for any reason, that HHFL recover its actual damages resulting from the early termination of the Franchise Agreement, plus prejudgment interest thereon;

(c)     That the Court enter judgment in favor of HHFL and against Defendants, jointly and severally, for the attorneys' fees and costs incurred in enforcing the terms of the Franchise Agreement and collecting amounts due under the Franchise Agreement;

(d)     That the Court tax all costs against Defendants; and

(e)     That the Court enter such other relief as is just and proper.

Respectfully submitted, this 31st day of March, 2020.

**KILPATRICK TOWNSEND &**
**STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
MTyler@kilpatricktownsend.com
KIsted@kilpatrcktownsend.com

s/ Michael W. Tyler
Michael W. Tyler
Georgia Bar No. 721152
Kathryn Isted
Georgia Bar No. 908030


Attorneys for Plaintiff
Holiday Hospitality Franchising, LLC